UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

UNITED STATES OF AMERICA

V.   CASE NO.: 8:18-CR-517-t-35AEP

ARNOLD NELSON JR.
_____/

DEFENDANT'S SENTENCING MEMORANDUM AND REQUEST TO IMPOSE A SIXTY (60) MONTH PRISON SENTENCE

The Court should sentence the defendant, Arnold Nelson Jr., to a sixty month prison sentence, which is the minimum mandatory sentence, followed by term of supervised release of four years. In support of this position, the Defendant states as follows:

1.  Between the dates of January 23, 2018 and June 14, 2018, Mr. Nelson sold substances containing heroin, fentanyl, and methamphetamine to a confidential informant and to an undercover law enforcement officer. He did a total of five transactions. The total weight of the substances delivered (including the extremely large amount of "cut") was as follows: 353 grams of powder that tested positive for the presence of fentanyl, 116 grams of a substance that tested positive for the presence of heroin, and pills weighing 23 grams that tested positive for the presence of methamphetamine. Doc. 60 (Final PSR), paragraphs 19-23.

2. In paragraph 19, the PSR (Doc. 60) details a transaction that occurred on January 23, 2018 whereby Mr. Nelson delivered a plastic bag containing a substance that tested positive for the presence of fentanyl and heroin. The net weight of the substance was 28.68 grams. This item is referred to by ATF as "exhibit 1" and had a substance purity percentage of 1.9 %. Therefore, the amount of pure substance in the 28.68 gram substance was **.54 grams of fentanyl.** There is nothing in the lab report to indicate the total amount of heroin in the substance. However it is clear that "cut" ingredients lidocaine (causes numbness) and diphenhydramine (causes sleepiness and poor coordination) were also present.

3. In paragraph 20, the PSR (Doc. 60) details a transaction that occurred on April 5, 2018 whereby Mr. Nelson delivered a plastic bag that contained a substance that tested positive for heroin and fentanyl. The net weight of the substance was 55.91 grams. This item is referred to by ATF as "exhibit 4" and had a substance purity percentage of 1.5%. Therefore, the amount of pure substance in the 55.91 gram substance delivered was **.83 grams of fentanyl**. There is nothing in the lab report to indicate the total amount of heroin in the substance. However it is clear that "cut" ingredients lidocaine (causes numbness) and diphenhydramine (causes sleepiness and poor coordination) were also present.

4. In paragraph 21, the final PSR (Doc. 60) details a transaction that occurred on April 19, 2018 whereby Mr. Nelson delivered a plastic bag that contained a substance that tested positive for fentanyl and heroin. The net weight of the substance was 56.9 grams. This item is referred to by ATF as "exhibit 5" and had a substance purity percentage of 1.2%. Therefore, the amount of pure substance in the 56.9 gram item was

**.6 grams of fentanyl**. There is nothing in the lab report to indicate the total amount of heroin in the substance. However it is clear that "cut" ingredients lidocaine (causes numbness), diphenhydramine (causes sleepiness and poor coordination) and caffeine were also present.

5. In paragraph 22, the final PSR (Doc. 60) details a transaction that occurred on May 10, 2018 whereby Mr. Nelson delivered a powdery substance that tested positive for heroin and 96 pills of MDMA (ecstasy) that tested positive for methamphetamine. The net weight of the powdery substance was 57.9 grams. This item is referred to by ATF as "exhibit 8" and does not appear to have a pure substance result, therefore the total amount of pure substance in the substance is **unknown**. The 96 pills is referred to by ATF as "exhibit 9" and had a 11% purity percentage. Therefore, the amount of pure substance in the pills is a total of **2.5392 grams of methamphetamine**.

6. In paragraph 23, the final PSR (Doc. 60) details a transaction that occurred on June 14, 2018 whereby Mr. Nelson delivered two baggies containing substances that tested positive for the presence of heroin. The first baggie (referred to by ATF as "exhibit 11") had a net weight of 54.6 grams and a substance purity result of 42%. Therefore the amount of pure substance was **22.9 grams of heroin hydrochloride**. The second baggie (referred to as "exhibit 12" by ATF) had a net weight of 4.5 grams and a purity level of 46%. Therefore, the amount of pure substance was **2.0 grams of heroin hydrochloride**.

7. No further transactions occurred with Mr. Nelson.

## MR. NELSON AND THE SECTION 3553(a) FACTORS

1. **The nature and circumstances of the offense and the history and characteristics of the defendant.**

While the undersigned acknowledges that drug dealing is a particularly serious crime, the Defendant was selling items to the undercover officers that contained mostly "cut" products lidocaine and diphenhydramine (substances that can be purchased at local vitamin shops throughout Tampa). In fact, it appears from the lab report of "exhibit 1", the 26.68 grams Mr. Nelson delivered on January 23, 2018 contained only .54 grams of actual fentanyl. So while Mr. Nelson was boosting up his profits and legal liability, the actual strength and dangerousness of the drug was minimal in the context of actual drug involved in the case.

The Defendant does have a prior record that includes a drug conviction in 2004, Paragraph 44 (Doc. 60), an Aggravated Stalking from 2007, Paragraph 56 (Doc. 60), an Uttering a Forged Instrument and Grand Theft, Paragraph 59 (Doc. 60), and a Possession of Heroin charge from 2017 that stems from just before the time the activity charged in the Indictment started, Paragraph 65 (Doc. 60). His other history appears to be related to driving issues and other misdemeanor type behavior. Accordingly, there is an extended period of time between January 2009 and October 2017 that he refrained from committing felony crimes.

In addition, the PSR attributes 3 criminal history points to a sentence Mr. Nelson received in paragraph 56 (Doc. 60). The 3 points are due to him being found in violation of his probation for committing the offense listed in paragraph 58 (Doc. 60) and being sentenced to prison. One week later, paragraph 58 od Doc. 60 shows that Mr. Nelson

was sentenced to a prison sentence to be served concurrent with the prison sentence he received in paragraph 56 (Doc. 60). While the allocation of 6 criminal history points may be permissible, we submit that it significantly overstates his criminal history and makes a downward variance of at least one to two levels appropriate.

2. **The need for the sentence to reflect the seriousness of the offense, promote respect for the law, provide just punishment, afford deterrence, and protect the public.**

The statutory minimum mandatory sentence of 60 months for a 33 year old man is a sufficient punishment for Mr. Nelson. While it may appear that the weight of the substances he sold was significant, it was actually a quite small amount of actual drug and, at times, almost 99 percent diluted with "cut" or over the counter substances that had very little consequence or side effect if they would have been consumed.

3. **The kind of sentences available.**

The only type of sentence available is prison. Clearly, Mr. Nelson will be sentenced to prison, the issue for this Court is the amount. Mr. Nelson agrees that his total offense level is 23 and submits in his objections to the PSR that he is a criminal history IV (guideline imprisonment range of 70-87 months). However, the PSR submits that Mr. Nelson is a criminal history V (guideline imprisonment range of 84-105 months). Depending on what criminal history this Court determines is appropriate under the guidelines, Mr. Nelson respectfully requests this Court to grant him a downward variance to 60 months in prison.

## CONCLUSION

For the reasons stated herein, Mr. Nelson respectfully urges this Court to impose a below-guidelines sentence of 60 months in prison, followed by supervised release. Such a sentence will be reasonable and will adequately take into account the advisory guideline range and the factors set forth at 18 U.S.C. section 3553(a).

Respectfully Submitted,

_Joe Caimano_____
Joe Caimano
FBN: 528374

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a true and correct copy of the foregoing has been furnished to the United States Attorney's Office, 400 North Tampa, Street, Suite 3200, Tampa, Florida 33602, by ECF, on this 22nd day of May, 2019.

__Joe Caimano_____
JOE CAIMANO, ESQ.
613 South Boulevard
Phone:  813-431-6069
Fax:      813-251-4036
Florida Bar No.: 528374
Attorney for Defendant NELSON
caimanoj@hotmail.com